UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN CHRISTOPHER o/b/o minor N.C.,

                Plaintiff,

-against-

THE CITY OF MOUNT VERNON; DETECTIVE EVERETT JOHNSON, individually and in his official capacity; POLICE OFFICER DEBENEDICTIS, individuals and in his official capacity, POLICE OFFICER BILLY EXARHAKOS, and MVPD officers JOHN and JANE DOE 1 through 10, individually and in their official capacities,

                Defendants.

16-CV-00137 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kevin Christopher, on behalf of minor N.C. ("Plaintiff")[1] initiated this action on January 7, 2016 by filing a complaint which was amended on August 30, 2016 (the "Amended Complaint"). The lawsuit arises under 42 U.S.C. § 1983 for alleged violations of N.C.'s Fourth and Fourteenth Amendment rights, alleging several causes of action, including: unlawful stop and search; false arrest; excessive force; malicious prosecution; failure to intervene; denial of her constitutional right to fair trial; and several state law claims, including false imprisonment; state

---

[1] The Plaintiff in this action is Kevin Christopher, not N.C. (*See generally* Am. Compl.) As N.C. was a minor at the timeframe relevant to the causes of action alleged in the Amended Complaint, all references to N.C.'s identity should have been redacted, filed under seal, or otherwise protected. It appears that both parties failed to do so as their respective papers include a caption in which N.C.'s full name is listed as the Plaintiff in this action, and none of the references to N.C.'s identity in the record are redacted. Nevertheless, the Court's references to "Plaintiff" refer to Kevin Christopher, and references to the complainant whose constitutional rights are alleged to have been violation will be to "N.C." To the extent the Court chooses to cite to portions of the record or the parties' papers, it will make the requisite alterations to reflect this approach.

law malicious prosecution; and assault and battery. (*See* Am. Compl. ¶¶31-80.)[2] Plaintiff's complaint is asserted against Defendants the City of Mount Vernon (the "City"), Detective Everett Johnson ("Johnson"), Police Officer Debenedictis ("Debenedictics"), and "Police Officer Billy Exarhakos ("Exarhakos") (collectively, "Defendants"). Presently pending is Defendants' Motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the causes of action that survived the June 16, 2017 Stipulation ("Defendants Motion"). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") (ECF No. 36), Plaintiff's Response to Defendants Rule 56.1 Statement of Undisputed Material Facts ("Plf. Resp.") and Plaintiff's Counterstatement of Undisputed Facts ("Plf. Cntr.") (ECF No. 40)[3], and a review of the record, and are uncontested except where indicated.

On November 21, 2013, six female students from Nellie Thorton High School and A.B. Davis Middle School in Mount Vernon New York, (*see* Plf. Resp. ¶2; Declaration of Matthew K. Schieffer in Support of Defendants' Motion ("Schieffer Decl.") (ECF No. 44), Ex. A at 58-59), visited the precinct and spoke with Johnson, (*see* Plf. Resp. ¶2.) They informed Johnson that they believed they were going to be attacked that day, approximately during school dismissal. (*Id.*) They further informed Johnson that they had received threats via Facebook, but did not know who was making the threats. (*Id.*)

---

[2] Plaintiff also alleged malicious abuse of process, (*see* Am. Compl. ¶¶59-63), negligent infliction of emotional distress, (*id.* ¶¶73-77), and unlawful strip search, (*id.* ¶¶78-80.) Such causes of action were withdrawn by Stipulation dated June 16, 2017. (*See* ECF No. 39.)

[3] Plaintiff's counterstatements are contained in the same document as the responses to Defendants' Rule 56.1 statement. (*See* ECF No. 49.) Defendants have provided no response to Plaintiff's counterstatements, though it appears that the majority of Plaintiff's counterstatements directly contradict many of the purported undisputed facts outlined by Defendants.

In light of this information, approximately fifteen minutes prior to the dismissal of the relevant schools, Johnson drove to Fourth Avenue between First and Second Streets, in close proximity to the schools. (*See* Plf. Resp. ¶4.) When he arrived, he saw four of the six females (the "Complainants") who had reported the potential fight walk into a bakery shop. (*Id.* ¶¶5-6.) At the time of school dismissal, 75 to 100 kids "came out, it was a frenzy" and Johnson overheard students shouting "where are there?" and "where they at?" (*Id.* ¶8.) The crowd of students spilled onto the roadway and sidewalk, and were moving toward the Complainants. (*Id.* ¶9.) Johnson called for backup and Exarhakos and Debenedictis appeared on the scene. (*Id.* ¶¶9-10.)

When Johnson exited his car, the first person he saw was N.C. (*See* Plf. Resp. ¶11.) Johnson contends that, at that point, he approached N.C. and gave her a lawful order to disperse. (*Id.*) At the time, N.C. was stopped on the street, using her phone. (*Id.* ¶14; Plf. Cntr. ¶¶2-3.) From this moment until the second N.C. was finally handcuffed and placed in a patrol car, the versions of the events are wildly different. Indeed, the only remaining facts that the parties do not dispute are that: (1) Johnson told N.C. to keep walking, and she responded that she was on her phone texting someone, (*see* Plf. Resp. ¶15); (2) she said "poof", (*id.*); (3) she then turned around to walk the other way, (*id.* ¶16); (4) she said she was a student at Thornton High School and was walking toward McDonald's after she left school, (*id.* ¶17); (5) she observed two to three officers trying to disperse a crowd of kids after school, (*id.* ¶18); (6) she was in the middle of the street when Johnson tried to arrest her, (*id.* ¶32); and (7) the incident occurred in a one way street with cars parked on both sides, (*id.* ¶33.)

As Defendants tell it, after Johnson gave N.C. the order to disperse and she said "poof" as she walked away, Johnson proceeded toward the Complainants, all while giving lawful orders to disperse to the crowd as he traversed across the street. (*See* Plf. Resp. ¶19.) By the time he arrived

3

at the Complainants, N.C. was "already there, standing approximately two feet away from them." (*Id.*) Johnson then told N.C. to leave, but she insistent that she would not. (*Id.*) He then attempted to inform the Complainants that he thought they were in danger, and "corralled" them into a store vestibule. (*Id.* ¶20.) Debenedictis and Exarhakos then arrived on the scene, began dispersing the crowd, and then the three officers made a wall between the Complainants and the crowd. (*Id.* ¶¶21-22.)

At the moment the crowd began to grow, Johnson contends that an unidentified young man "got in his face", in an attempt to intimidate him, but turned and ran away. (*See* Plf. Resp. ¶24.) Thereafter, Johnson was trying to talk to the Complainants to diffuse the situation, and see if they could identify the individuals who wanted to hurt them. (*Id.* ¶¶25-26.) It was then that he turned around and saw N.C. over his shoulder, approximately two and a half feet away from him and the Complainants, so he told her "I told you to leave before, if you stay here again, I told you, you are going to get arrested." (*Id.* ¶27.) N.C. then responded: "you ain't arresting nothing, you ain't arresting nothing." (*Id.*) It was then that he attempted to arrest her, and the incident erupted. (*Id.*)

Defendants' position is that Johnson then tried to her arrest her, but she kept evading him and saying "you ain't arresting shit." (*See* Plf. Resp. ¶¶28-34.) Johnson then attempted to grab her by the arm, but ultimately grabbed her by her sweatshirt, and she was able to break loose. (*Id.* 34.) Johnson contends that the entire time while he was attempting to arrest N.C., she was repeatedly flailing about, twisting her body, and attempting to prevent him from placing handcuffs on her. (*Id.* ¶35.) As this attempt to arrest her continued, Johnson and N.C. ended up backing up across the street, until they were up against a parked car. (*Id.* ¶¶37-38.) At that point, Johnson grabbed her, gave her a bear hug, twisted her, and gave her a hip toss down to the ground. (*Id.* ¶39.) N.C. persisted to resist arrest, kicking Johnson in the leg, screaming profanities, and being

aggressive. (*Id.* ¶40-41.) At some point, Exarhakos and Debenedictis assisted Johnson, and were in a better position to finish the arrest. (*Id.* ¶¶43-45.) While N.C. was on the ground, she began tightening up, kicking her feet, and flailing her arms. (*Id.* ¶¶46-48.) In the process of doing so, and shortly after Exarhakos managed to get one cuff on one of N.C.'s hands, she broke loose and kicked Exarhakos in the right eye. (*Id.* ¶49.) The officers informed her that if she did not stop resisting, they would use pepper spray on her, which they ultimately did. (*Id.*) The officers were then able to place handcuffs on N.C., put her in a squad car, and take her to the hospital where her eyes were washed out. (*Id.* ¶¶53-54.)

According to N.C., when she first encountered Johnson, she was stopped in the street sending a text message. (*See* Plf. Cntr. ¶¶1-4.) Johnson told her to keep walking, and she complied by crossing the street at the corner, walking in the direction of McDonald's. (*Id.* ¶¶3-4.) Consequently, she was in the roadway in an attempt to comply with Johnson's directions. (*Id.* ¶5.) N.C. proceeded to send her text, and said to herself "poof." (*Id.* ¶6.) Thereafter, Johnson apparently became enraged and said "I got your poof, I got your poof," and followed N.C. into the middle of the street. (*Id.* ¶¶7-8.) At that point, Johnson grabbed N.C., pulled her hoodie off of her head and "slammed her on the side of [a] car." (*Id.* ¶¶9-10.) N.C. contends that she was lying on her back, not resisting in any way. (*Id.* ¶10.)

The other officers then arrived, "put their knees across [N.C.'s] chest, neck and [] face." (*Id.* ¶12.) One also put his knee in her neck and the others pushed her face against the tire of a nearby car, preventing her from breathing. (*Id.* ¶¶13-14.) N.C. contends that her hands were out, but the officers were not attempting to handcuff her, and that when she could not breathe, she began to panic and kick her legs, ultimately coming into contact with one of the officers. (*Id.* ¶¶15-16.) Debenedictis then sprayed N.C. with pepper spray, though he did not warn her he would

5

do so. (*Id.* ¶18.) She was then handcuffed and brought to the hospital. (*Id.* ¶¶19-20.) N.C. contends that she suffered injuries from being maced and had bruises on her body several days after the accident. (*Id.* ¶¶20-21.)

N.C. was arrested for obstruction of governmental administration, resisting arrest, and assault. (*See* Plf. Resp. ¶¶55-56.) The assault charges were ultimately withdrawn by the prosecutor, but N.C. went to trial on the remaining charges, which were dismissed in Family Court. (*Id.* ¶¶62-63.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the

6

inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## DISCUSSION

The Court notes that, based on the recitation of facts above, *all* of the material facts central to each of the causes of action are in dispute. Consequently, Defendants are not entitled to summary judgment on any of the claims (with one exception explained below). Nevertheless, the Court will consider each of Defendants' arguments in brief.

### I. False Imprisonment, False Arrest, and Malicious Prosecution[4]

Defendants seek summary judgment on Plaintiff's claims of false imprisonment, false, arrest, and her state and federal malicious prosecution claims, arguing that probable cause existed

---

[4] Defendants also seek dismissal of Plaintiff's claim for unlawful stop and search. (*See* Defs. Br. at 3-6.) Plaintiff's opposition fails to address this cause of action at all. The Court therefore deems it abandoned. *City of Perry, Iowa v. Proctor & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016); *Moore v. City of New York*, 15-CV-6600 (GBD) (JLC), 2018 WL 3491286, at *14 (S.D.N.Y. July 20, 2018) (dismissing state law claims regarding which plaintiff failed to oppose the arguments for dismissal), *report and recommendation adopted* 2018 WL 4043145 (Aug. 7, 2018); *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *2 (S.D.N.Y. May 19, 2016) (dismissing claims unaddressed in plaintiff's opposition as abandoned); *Dawson v. City of New York*, No. 13-CV-5956 (JMF), 2014 WL 5020595, at *3 (S.D.N.Y. Oct. 8, 2014). Defendants are entitled to summary judgment on the claim for unlawful stop and search.

for the arrest. (*See* Defs. Br. at 6-11.)[5] In opposition, Plaintiff contends that there are several issues of material fact, at least as to probable cause, to warrant denial of Defendants' motion. (*See* Plf. Br. at 5-15.) This Court agrees.

A complete defense to each of these claims is the demonstration by Defendants that probable cause exists. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (noting that federal and state false arrest (false imprisonment) are substantially the same and that probable cause is a complete defense); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("the existence of probable cause is a complete defense to a claim of malicious prosecution"); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citing *Weyant v. Oskt*, 101 F.3d 845 (2d Cir. 1996)) (probable cause complete defense to false arrest); *Carrillos v. Inc. Village of Hempstead*, 87 F. Supp. 3d 357, 376 (E.D.N.Y. 2015) (false arrest and false imprisonment are the same and can both be defeated by probable cause). "An officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)). Such a determination requires an analysis of the "totality of the circumstances." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

The Court need not linger on this issue. Defendants repeatedly contend that the "undisputed facts" demonstrate that the officers had probable cause to arrest N.C. for Obstructing Governmental Administration because "[N.C.] prevented Detective Johnson from protecting the Complainants and investigating a probable assault", N.C. "intentionally intimidated the

---

[5] As Defendants only discuss the probable cause aspect of false arrest, false imprisonment, and state and federal malicious prosecution, (*see* Defs. Br. 6-11), for purposes of this motion only, the Court deems that Defendants have conceded Plaintiff's ability to establish the remainder of the elements of the requisite causes of action, and therefore focuses its analysis on the probable cause determination only.

Complainants so that they would not talk to Detective Johnson out of fear of being labeled a snitch", and N.C.'s conduct "not only obstructed the free flow of pedestrian and vehicular traffic, but also prevented Detective Johnson from tending to the traffic." (*See* Defs. Br. at 7, 11.) Defendants' position is wholly contradicted by Plaintiff's account.

Specifically, Plaintiff contends that N.A. disputes each of the alleged facts as listed above. (*See* Plf. Resp. ¶¶19, 27-31.) According to Plaintiff, N.C. never even got close to the alleged Complainants, as she complied with Johnson's order to disperse when she first saw him as she was using her cellphone. (*See* Plf. Cntr. ¶¶1-4.) At that point, she maintains, she began to cross the street, but Johnson became irate when she "said to herself, 'poof'" after sending a text message. (*Id.* ¶¶6-7.) It was at that point, she was followed by Johnson into the middle of the street, and that's when the attempts to arrest her began. (*Id.* ¶¶8-14.) Whether N.C. ever reached the Complainants, such that it could be said she intimidated them, or obstructed Johnson's ability to have a confidential conversation with them, or obstructed the free flow of traffic due to her own actions, or Johnson's are essential to the determination of probable cause with regard to obstruction of governmental administration.

Additionally, N.C.'s contentions that the officers had no probable cause to believe that she was obstructing traffic is arguably supported by Johnson's testimony, insofar has he describes the scene as a "frenzy" before he even approached N.C., (*see* Schieffer Decl., Ex. A at 61), and that references in the officers' testimony to the traffic being impeded typically refer to other kids and do not pertain to N.C., (*id.* at 64, 71; Schieffer Decl., Ex. B at 19; Schieffer Decl., Ex. C at 30.) Johnson's testimony can also be read to buttress N.C.'s position that she was not attempting to intimidate the complainants, as, even if Defendants' account is true and N.C. did approach complainants, Johnson concedes that she did not say anything to them, (*id.* at 71, 80.) N.C.'s and

the Officers' versions of events diverge in nearly every respect; it is clear that there are material factual issues that only the jury has the province to resolve. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (noting that court should accept plaintiff's version of events "given under oath", which led to the conclusion that "a reasonable juror could find that plaintiff was arrested without probable cause").

This is likewise true with regard to the existence of probable cause as to assault in the second degree and resisting arrest. Defendants contend that N.A. "tightened up, kicked her feet, and flailed her arms whole the officers were attempting to effect a lawful arrest", and that during the scuffle, her "foot got loose and made direct contact with Officer Exarhakos' right eye." (*See* Defs. Reply at 3; Plf. Resp. ¶¶41-49.) By contrast, N.A. testified that, while she admits that her legs did move while she was on the ground, she only began doing so "after the officers rendered her unable to breathe." (*See* Plf. Resp. ¶¶50, Plf. Cntr. ¶¶10-16.) Consequently, if N.C.'s account is believed, a reasonable juror could find that her kicking occurred as an involuntary reaction to her inability to breathe, rather than as an intentional attempt to resist arrest or assault an officer. *See Jocks*, 316 F.3d at 135 (noting that an officer's awareness of "the facts [known to the officer at the time of arrest] supporting a[n exculpatory] defense can eliminate probable cause"). The video evidence fails to illuminate the issue of probable cause as it merely depicts N.C. on the ground against a truck with two officers over her, kicking her legs. (*See* Schieffer Decl., Ex. F.) The video evidence is largely consistent with either version of the facts.

In response to Plaintiff's contention that the facts are sharply in dispute with respect to probable cause, Defendants argue that:

> Plaintiff would have you believe that, without provocation, Detective Johnson approached [N.C.] for no reason, told her to keep walking and that she immediately complied, and after she made a comment that enraged Detective Johnson, he followed her into the middle of the street, grabbed

> her by the hood and threw her into a car and onto the ground. At which point, for no apparent reason, Officer Exarhakos pepper sprayed the Plaintiff and placed her in handcuffs and then put her in the back of a police car.

(*See* Defendants' Reply Brief in Further Support of their Motion ("Defs. Reply") (ECF No. 46) at 3-4.) Defendants' argument is more reminiscent of a closing argument to a jury, asking them to believe Defendants' version of events over Plaintiff's, than an argument to a Court on summary judgment. Despite Defendants' apparent indignation of Plaintiff's position, it is nevertheless patently clear that Defendants are asking this Court to make credibility determinations to resolve this motion for summary judgment. The Court cannot do so and therefore declines to do so. *Anderson*, 477 U.S. at 249 (noting that it is not a Judge's function to weigh the evidence but rather to identify material issues of fact that should be heard at trial).

Defendants' contention that Plaintiff's version of the facts amounts to "unsupported allegations" does not persuade this Court otherwise. While it is true that a motion for summary judgment cannot be defeated by unsupported allegations, or reliance on the non-movant's pleadings, *see See Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 247 (S.D.N.Y. 2015), Plaintiff has provided testimony, under oath, that contradicts Defendants' version of the facts. Such testimony is not "unsupported allegations" insufficient to raise genuine issues of material fact.[6] *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (quoting *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) for proposition that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment") (alterations omitted); *Brome v. City of New York*,

---

[6] To the extent that Defendants cite *Arias v. United States*, No. , 2014 WL 5004409, at *10 (S.D.N.Y. Sept. 29, 2004), in support of their position, it is inapplicable here. The quote that Defendants rely on is that "[u]nsupported statements of counsel are insufficient to create a genuine issue of fact." *See id.* (*See also* Defs. Br. at 4.) That is not what occurred here. Plaintiff's counsel's arguments are based on N.C.'s testimony, under oath.

No. 02-CV-7184 (WHP), 2004 WL 502645, at *3 (S.D.N.Y. Mar. 15, 2004) (summary judgment improper where plaintiff's version of events entirely contradicted detective's version).

Defendants are therefore not entitled to summary judgment on the false arrest, false imprisonment, or either the federal or state malicious prosecution claims.

## II. **Excessive Force and Assault and Battery**

Defendants also move for summary judgment on Plaintiff's excessive force and assault and battery claims. (*See* Defs. Br. at 12-16.) Defendants' motion is denied.

When considering excessive force claims under the Fourth Amendment, court must "examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). Courts then, "consider the *facts and circumstances* of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Id.*

Simply put, the Court cannot render the requisite analysis in this case. As indicated above, the facts are starkly in dispute. The Court cannot assess whether the facts demonstrate that Defendants' force was unreasonable. Indeed, the determination comes down to a question of credibility. Critically, if Plaintiff's position is believed, a reasonable juror could find in her favor on the excessive force claims. The same is true for her claims for assault and batter. *See Garcia v. Dutchess Cnty.*, 43 F. Supp. 3d 281, 298 (S.D.N.Y. 2014) (quoting *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991) for proposition that "[e]xcept for § 1983's color of state law requirement, the essential elements of an excessive force claim and of New York state law assault and battery claims

are substantially identical.") (internal quotations omitted). Defendants are not entitled to summary judgment.

## III. <u>Denial of a Constitutional Right to a Fair Trial</u>

"[W]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under" Section 1983. *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2c Cir. 1997)). Such an action is warranted when "the allegedly fabricated evidence 'is the officer's own account of his or her observations of alleged criminal activity, which he . . . then conveys to a prosecutor.'" *Lauderdale v. City of New York*, No. 15-CV-1486 (JGK), 2018 WL 1413066, at *8 (S.D.N.Y. Mar. 19, 2018) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016)).

Plaintiff's position is that Defendants falsehoods to the prosecutor were as follows: "1) Johnson gave [N.A] multiple orders to disperse, which [N.C.] allegedly ignored, 2) [N.C.] was flailing her arms and legs, resisting arrest; and 3) [N.C.] assaulted Johnson and Exarhakos." (*See* Plf. Br. at 20.) Plaintiff contends that the information was falsified in the reports to the prosecutor, and the later testimony of Johnson and Exarhakos before the Family Court. (*Id.*) The Court, again, cannot resolve summary judgment on this issue. Resolving all reasonable inferences in Plaintiff's favor, a reasonable juror could find that Johnson and Exarhakos falsified their statements to the prosecutor and/or before the Family Court, and that such statements would be critical, not just likely to influence a jury.

Nevertheless, Plaintiff's opposition clarifies that this claim is only asserted against Johnson and Exarhakos, as it states that Johnson gave the statement to the prosecutor and both Johnson and

Exarhakos testified in Family Court. (*See* Plf. Br. at 20-21.) There is no mention of any falsified testimony given or reports prepared on the part of Debenedictis. To the extent Plaintiff did assert this cause of action against Debenedictis in the Complaint, he is entitled to summary judgment. Consequently, Defendants' Motion is granted in part and denied in part.

## IV. Failure to Intervene

A failure to intervene claim is "predicated on there being an underlying violation of [a plaintiff's] constitutional rights that the defendants could have prevented." *McIntosh v. City of New York*, 722 F. App'x 42, 46 (2d Cir. 2018) (summary order) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)). As this Court is unable to ascertain whether or not N.C.'s rights were violated, due to the completely contrary versions of events between the parties, it is evident that Defendants are not entitled to summary judgment on the claim of failure to intervene. Defendants' motion is denied.

## V. Qualified Immunity

"Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015); *see also McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006). An "arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* That is simply not the case here. As indicated above, *all* of the material facts relevant to this case are in dispute. Indeed, if this Court makes all reasonable inferences in Plaintiff's favor, the Defendants are not entitled to qualified immunity on any of the claims. Consequently, summary judgment is not proper. *Id.* at 149 (overruling district court that "failed

to heed the rule that resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity").

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part. It is granted in the limited respect that judgment is warranted in Debenedictis' favor with respect to the claim for denial of a constitutional right to a fair trial. It is denied in all other respects. The parties are directed to appear for a pretrial conference on October 26, 2018 at 11:00 a.m. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 42.

Dated: September 28, 2018
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge